UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ZAHID HOTEL GROUP, LLC | * | CIVIL ACTION NO.: 2:22-cv-02792 |
| VERSUS | * | DISTRICT JUDGE: ELDON E. FALLON |
| AMGUARD INSURANCE COMPANY | * | MAGISTRATE JUDGE: MICHAEL NORTH |

**ORDER AND REASONS**

Before the Court is Defendant AmGUARD Insurance Company's ("AmGUARD" or "Defendant") Motion for Partial Summary Judgment on Coverage. R. Doc. 130. After considering the motion, Plaintiff Zahid Hotel Group, LLC's ("Zahid" or "Plaintiff") Response in Opposition, R. Doc. 138, AmGUARD's reply, R. Doc. 153, the record, and the applicable law, the Court rules as follows.

I.  **BACKGROUND**

This case arises out of alleged damage to a LaQuinta Inn, a property owned and operated by Zahid, which had an insurance policy (the "policy") through AmGUARD. R. Doc. 9 at 3. Zahid alleges that, on August 29, 2021, Hurricane Ida caused significant damage to its property. *Id.* at 4. Zahid alleges that although AmGUARD has paid it $1,032,617.92 for building repairs and mitigation, this amount is insufficient to cover its repair costs, and that it has not received compensation to which it is entitled under the Policy for business personal property and income loss claims. R. Doc. 18 at 4.

Zahid filed suit against AmGUARD asserting breach of contract, violation of La. R.S. § 22:1892 for failing to meet statutory payment deadlines, and violation of La. R.S. § 22:1973 for

1

breach of a duty of good faith and fair dealing. R. Doc. 9 at 8–9. It seeks damages for (1) diminution in value of property; (2) actual repair costs; (3) reimbursement for personal repairs at the property; (4) loss of business income; (5) consequential damages, (6) attorney's fees; and (7) statutory penalties. *Id.* at 9-10. Additionally, Zahid requests declaratory relief that Defendant had an obligation to comply with La. R.S. § 22:1892 and La. R.S. § 22:1973. *Id.* at 8.

AmGUARD subsequently asserted a counterclaim against Zahid, alleging breach of contract, bad faith breach of contract, and declaration of no coverage for misrepresentation. R. Doc. 88. AmGUARD alleges that Zahid breached its insurance policy by overstating damages, attributing pre-existing damages to Hurricane Ida when Zahid knew they were not caused by Ida, and failing to mitigate the damages that Ida did cause. *Id.* at 16-21.

## II.   PRESENT MOTION

AmGUARD filed a motion for partial summary judgment, moving the Court to find as a matter of law that coverage under the policy is either limited or does not exist as to six specific damage claims asserted by Zahid. R. Doc. 130. Those six areas are: (1) the pool fence; (2) the outdoor sign; (3) the increased cost of construction based on compliance with a law or ordinance; (4) structural damage; (5) diminution of property value; and (6) the rooms/areas of the hotel that were not damaged. *Id.*

*Fence and Sign*. AmGUARD argues that the policy caps recovery for damage to outdoor fences at $10,000 and caps recovery for damage to an outdoor sign at $5,000. R. Doc. 130-1 at 7-8. Zahid claimed damages of more than $14,000 for the fence that borders its outdoor pool and more than $45,000 for damage to its outdoor sign. Id. AmGUARD argues that as a matter of law, the Court should limit any applicable recovery for those damaged items as capped in the policy.

*Compliance Costs*. Zahid sought coverage under a provision of the policy which permits an insured to obtain an additional $10,000 for "Increased Cost of Compliance" that is connected to bringing the building into compliance with a building code, ordinance, or other law. *See id.* at 10. AmGUARD argues in its motion that this section requires the insured to cite to the building code, ordinance, or law with which they must now comply following their damages in order to obtain these additional funds. *Id.* at 11-12. Because Zahid failed to cite any code, ordinance, or law related to this claim, AmGUARD urges Zahid is not entitled to these funds under the policy as a matter of law.

*Structural Damage*. AmGUARD notes that in Zahid's complaint, damages are claimed for alleged structural damage but AmGUARD argues that the policy excludes coverage for "collapse…of structural integrity." *Id.* at 14. AmGUARD urges this category of damages be dismissed as not covered under the policy since Zahid does not specifically allege any structural damage beyond its already claimed damage to the building. *Id.* at 14-15.

*Diminution of Property Value*. AmGUARD objects to Zahid's claim for this category of damages because neither Zahid nor its experts have provided any evidence of the loss of property value separate from its already-claimed damages as to the building and its cost of repairs. *Id.* at 15. AmGUARD argues that to the extent these damages are indistinct from its repair and building damages, it should be dismissed as duplicative, and to the extent that it represents some other form of damages, Zahid has failed to meet its burden in putting forth evidence to support the claim. *Id.*

*Undamaged Rooms and Facilities*. AmGUARD argues that Zahid's claims for damages and its repair estimates encompass every single room and facility in the hotel, but "according to Zahid's own litigation experts, not every room was damaged by Hurricane Ida." *Id.* at 16. AmGUARD notes that Zahid's forensic causation expert and structural engineer, Robert Wright,

3

provided an executive summary of his findings and noted that not every single room or facility was damaged by Hurricane Ida. *Id.* at 16-20 ("Wright testified under oath that if an area is not listed in his expert report, then, in his expert opinion, it was not damaged.") (citing Wright Depo., R. Doc. 130-13 at 21-22). Further, AmGUARD points to Zahid's cost expert, David Cianchetti's deposition where he acknowledged that Zahid sought coverage for repairing undamaged areas. *Id.* at 20 (citing Cianchetti Depo., R. Doc. 130-11 at 33, 37). Specifically, AmGUARD claims that it is entitled to summary judgment on Zahid's claims for damages and related bad faith and penalties as to the following areas: "the first-floor women's restroom, men's restroom, mechanical room, fitness room, stairs, [and] guest rooms 117, 119, 121, 123, 125, [and] 127; the second-floor guest rooms 208, 211, 213, 215, 216, 217, 218, 219, 221, 223, [and] 225; and the third-floor guest rooms 305, 309, 311, 312, 313, 317, 321, 323, [and] 324." *Id.* at 20-21.

Zahid timely filed its opposition in which it does not dispute AmGUARD's argument as to the outdoor sign coverage cap, the cost of increased compliance claim, and the diminution of property value claim and therefore does not oppose a grant of summary judgment for AmGUARD on those items. R. Doc. 138 at 5, 7. Zahid does however oppose AmGUARD's claims as to the pool fence, structural damage, and the allegedly undamaged rooms and facilities.

*Fence*. Zahid acknowledges that the policy caps recover for damage to outdoor fences at $10,000 but disputes the characterization of the item as a "fence" and instead argues that it's an outdoor "fixture," which is covered under the policy. *Id.* at 3-4. Noting that "fence" is undefined in the policy, Zahid argues that "structures" are defined to include "(2) fixtures, including outdoor fixtures; (3) permanently installed: (a) Machinery; (b) and Equipment." *Id.* at 4 (citing R. Doc. 130-3 at 92). Zahid claims that the "fence" around the pool is in fact a metal structure that "utilizes stanchions permanently embedded into the concrete surrounding the hotel's pool." *Id.* Further, the

4

stanchions are "connected to electrical feeds that provide power to a covered item such as pool equipment or outdoor lighting" which makes this an outdoor structure or fixture rather than a fence. *Id.* AmGUARD refutes this argument, noting that multiple parties and experts throughout the litigation have called this item a "fence" and that common sense would warrant such a conclusion, but even granting Zahid's argument, AmGUARD claims its refusal to pay for this item beyond the policy's cap is not unreasonable, arbitrary, capricious, or in bad faith. R. Doc. 153 at 2-4.

*Structural Damage*. Zahid argues that it is entitled to "structural damages" based on the damage to the hotel's roof. R. Doc. 138 at 5. Further, Zahid posits that AmGUARD's pre-suit inspectors chose to ignore damage to the roof either by virtue of faulty information or simply lack of diligence. *Id.* at 6. Zahid claims there are "substantial questions of material fact" as to the nature and extent of roof damage caused by the Hurricane and therefore summary judgment is inappropriate on this item of damages. *Id.* at 7. In reply, AmGUARD states it is well aware of claimed damages to the roof and that the policy's structural damage coverage references the building's foundation or other integrity matters, rather than the building damage already claimed elsewhere. R. Doc. 153 at 5 ("If 'structural damage' means something different than 'building damage,' Zahid Hotel doesn't say what that difference is.").

*Undamaged Rooms and Facilities*. Zahid argues that it is entitled to the full damages claimed, contrary to AmGUARD's assertions, because while certain areas might have been immediately and directly damaged by the Hurricane, the entire hotel was overrun by mold in the weeks and months to follow, something Zahid attributes to AmGUARD's refusal to provide mitigation funds immediately after the Hurricane struck. R. Doc. 138 at 7. Arguing that the policy covers damage that results from covered loss, Zahid maintains that the mold proliferation stemmed from the Hurricane, specifically as a result of AmGUARD's failure to provide quick mitigation

5

funding and/or the coverage sought. *Id.* at 7-8. In reply, AmGUARD characterizes Zahid's arguments as irrelevant to the issue of whether these specific areas were damaged by Hurricane Ida, noting that Zahid failed to refute any of Wright's opinions or methodologies and therefore summary judgment is appropriate on these items. R. Doc. 153 at 7-9.

### III.    APPLICABLE LAW

#### a. Summary Judgment

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

#### b. Insurance Contract Interpretation

Louisiana law applies the general rules of contract interpretation to construe insurance policies. *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269 (5th Cir. 1990). "The parties' intent, as reflected by the words of the policy, determine the extent of coverage." *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 1994). "Words and phrases used in a policy are

to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Id.* Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. *Ledbetter v. Concord Gen. Corp.*, 665 So.2d 1166, 1169 (La. 1996).

Courts interpreting liability policies should interpret such policies "to effect, rather than to deny coverage" but "it is well-settled that unless a statute or public policy dictates otherwise, the insurers may limit liability and impose such reasonable conditions or limitations upon their insureds." *Supreme Services & Specialty Co., Inc. v. Sonny Greer, Inc.*, 958 So. 2d. 634, 638-39 (La. 2007). Further, when exclusionary provisions are unambiguous, they "must be given effect." *Id.* at 639.

In Louisiana, "[t]he burden rests with the insured to prove that an insurance policy covers a particular claim." *IberiaBank Corp. v. Illinois Union Insurance Co.*, 953 F.3d 339, 346 (5th Cir. 2020). However, the burden of proving the applicability of an exclusion rests with the insurer. *Jones v. Estate of Santiago*, 870 So. 2d 1002, 1010 (La. 2004)).

### IV. DISCUSSION

First, as Zahid does not oppose AmGUARD on the categories of damages relating to the outdoor sign and coverage cap of $5,000, the increased cost of construction for compliance, and the diminution of property value, the Court will grant summary judgment to AmGUARD as to those claims. Next, the Court turns to the disputed damage categories: the fence, the structural damage, and the undamaged areas.

The Court is persuaded that the fence surrounding the pool is indeed a fence and therefore the coverage cap applies. That the fence is "permanently embedded in the concrete" around the

pool does not transform the fence into an outdoor fixture or permanently installed machinery or equipment. Fence is an undefined term in the policy and accordingly the Court gives it its commonsense meaning.

As to the structural damage, the Court finds that the term as written in the policy could encompass the damage to the roof. The policy provision at issue reads as follows:

i. Collapse

(1) Collapse, including any of the following conditions of property or any part of the property:

(a) An abrupt falling down or caving in;
(b) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or
(c) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph i.(1)(a) or i.(1)(b).

R. Doc. 130-3 at 109. Zahid argues that AmGUARD lacks a full understanding of the damage to the roof support system and the roof trusses and accordingly summary judgment on this item is inappropriate. The Court agrees, noting that while terms such as "falling down" and "structural integrity" can certainly refer to the building's foundation, the terms "caving in" and "sagging" could capture the damage to the roof, should it be shown the roof's damage has led to caving in or sagging. Accordingly, summary judgment on the claimed structural damage is denied at this time.

Last, the Court turns to the alleged undamaged areas. The Court is reluctant to grant summary judgment on these listed rooms and facilities at this time because while Zahid's response is less than thorough and does not specifically refute the findings of Mr. Wright on which AmGUARD relies, the facts show that much of the hotel incurred damage following Hurricane iDA and that this damage exacerbated over time. A reasonable fact finder could find that the Hurricane only caused some of these damages while the actions (or inactions) of Zahid caused

others, or that they were preexisting. Which areas were damaged by Hurricane Ida is a question of fact and, in this specific case, necessarily involves various credibility determinations and the weight of various experts' opinions. The Court will not grant summary judgment on this issue at this time.

Accordingly, for the foregoing reasons, AmGUARD's motion for summary judgment is GRANTED IN PART as to the damages claimed to the pool fence, outdoor sign, increased cost of compliance, and diminution of property value, and DENIED IN PART as to the structural damage and allegedly undamaged (by Ida) rooms and facilities.

New Orleans, Louisiana, this 1st day of December, 2023.

_____
United States District Judge